UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 06/24/2013
```

------------------------------------------------------------------X

RICHARD BAKALOR, *as executor for the Estate Of
James Featherstone, decedent*,

                                        Plaintiff,

            -v-

J.B. HUNT TRANSPORT, INC.,

                                        Defendant.

------------------------------------------------------------------X

11 Civ. 2911 (JMF)

<u>MEMORANDUM OPINION
AND ORDER</u>

JESSE M. FURMAN, United State District Judge:

This case arises from an incident on January 4, 2010, when James Featherstone was struck and killed by a tractor trailer driven by Imogene McQuarley, a driver for J.B. Hunt Transport, Inc. ("J.B. Hunt").  On January 25, 2013, after four days of trial, a jury rendered a verdict in favor of Plaintiff, the executor of Featherstone's estate, against J.B. Hunt.  The jury found that J.B. Hunt's negligence was the proximate cause of Featherstone's injuries and death and awarded damages to Plaintiff in the amount of $500,000 for Featherstone's conscious pain and suffering and $12,081.20 for funeral and burial expenses.  Judgment was entered on February 1, 2013.  (Docket No. 78).  J.B. Hunt now moves for judgment as a matter of law or, in the alternative, a new trial.  (Docket No. 87).

To the extent that J.B. Hunt's motion seeks judgment as a matter of law pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, it is entirely without merit.  Rule 50 "imposes a heavy burden on a movant, who will be awarded judgment as a matter of law only when 'a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'"  *Cash v.*

*Cnty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011) (quoting Fed. R. Civ. P. 50(a)(1)); *accord Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 127-28 (2d Cir.2012). In fact, the "burden is particularly heavy where, as here, the jury has deliberated in the case and actually returned its verdict in favor of the non-movant." *Cash*, 654 F.3d at 333 (internal quotation marks omitted). In such circumstances, a court may set aside the verdict only if, viewing the evidence in the light most favorable to the non-movant, "there exists such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair minded persons could not arrive at a verdict against it." *Id.* (internal quotation marks omitted); *see also, e.g.*, *Zellner v. Summerlin*, 494 F.3d 344, 371 (2d Cir. 2007) (stating that a Rule 50 motion may be granted only if the court concludes that "a reasonable juror would have been *compelled* to accept the view of the moving party" (internal quotation mark omitted)).

Applying these standards here, there is no basis to attack the jury's verdict that J.B. Hunt's negligence was the sole proximate cause of the accident and Featherstone's death. The jury's findings were amply supported by the evidence, most notably by a videotape of the accident — all but ignored by J.B. Hunt in its post-trial motion — that appears to show Featherstone walking across the street in the crosswalk being struck by the tractor trailer. Combined with other evidence (for example, evidence relating to the timing of the pedestrian crossing signals at the intersection), that videotape supports a finding that Featherstone was struck in the crosswalk when the pedestrian crossing light was blinking red and he still had the right of way. *See* N.Y.C. Traffic Rules and Regs. § 4-03(c)(2). When considered in conjunction with, among other things, McQuarley's admissions that she had not received training on how to drive a tractor trailer in New York City (Tr. 154, 163); and that she did not know the difference

between a pedestrian crossing signal flashing red and showing steady red (Tr. 165), this evidence plainly provided a basis for the jury's verdict that J.B. Hunt was negligent.

To the extent that J.B. Hunt's motion seeks a new trial pursuant to Rule 59(a), it also falls short.  Under Rule 59(a), a court "may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a)(1)(A).  The standard for granting a new trial under Rule 59(a) is less stringent than the standard for judgment as a matter of law under Rule 50.  *See, e.g.*, *Manley v. AmBase Corp.*, 337 F.3d 237, 244-45 (2d Cir. 2003).  Specifically, a motion for a new trial "may be granted even if there is substantial evidence to support the verdict."  *DeWitt v. N.Y. State Hous. Fin. Agency*, No. 97 Civ. 4651, 1999 WL 672560, at *1 n.1 (S.D.N.Y. Aug. 24, 1999) (quoting *Bevevino v. Saydjari*, 574 F.2d 676, 683 (2d Cir. 1978)).  Moreover, the court is not required to view the evidence in the light most favorable to the nonmoving party, but may weigh it independently.  *See Manley*, 337 F.3d at 244-45.  Nevertheless, a motion for a new trial may be granted only where "the court is convinced that the jury reached a seriously erroneous result," where the verdict is "against the weight of the evidence," *id.* at 244-45 (internal quotation marks omitted), or where "'the trial was not fair to the moving party,'" *DeWitt*, 1999 WL 672560, at *1 (quoting *Mollis v. Bankers Trust Co.*, 717 F.2d 683, 691 (2d Cir. 1983)).  "In evaluating a Rule 59 motion, the trial judge's duty 'is essentially to see that there is no miscarriage of justice.'"  *DeWitt*, 1999 WL 672560, at *1 (quoting *Sharkey v. Lasmo (AUL Ltd.)*, 55 F. Supp. 2d 279, 283 (S.D.N.Y. 1999)).

In this case, J.B. Hunt contends that there are five reasons to question the jury's verdict, but none has merit.  First, J.B. Hunt asserts that the jury's verdict was against the weight of the evidence and inconsistent insofar as the jury awarded Plaintiff nothing for pre-impact terror

(presumably therefore finding that Featherstone had not been aware that he was going to be struck by the tractor trailer) and found that Featherstone was not negligent at all. (Def.'s Mem. 7). The former contention is without merit substantially for the reasons stated above. Put simply, given the ample evidence supporting the jury's findings on negligence, it cannot be said that the verdict was erroneous or a miscarriage of justice. The contention of inconsistency, on the other hand, was waived because J.B. Hunt concededly failed to object to the jury's verdict on that ground before the jury was discharged. (Def.'s Reply Mem. 2-3). *See, e.g.*, *Kosmynka v. Polaris Indus., Inc.*, 462 F.3d 74, 83 (2d Cir. 2006) ("It is well established that a party waives its objection to any inconsistency in a jury verdict if it fails to object to the verdict prior to the excusing of the jury."); *accord Cash*, 654 F.3d at 343. In any event, the Court detects no "irreconcilable inconsistency" in the jury's verdict, as would be required to set it aside and order a new trial. *Cash*, 654 F.3d at 342-43; *see also, e.g.*, *Munafo v. Metro. Transp. Auth.*, 381 F.3d 99, 105 (2d Cir. 2004) (instructing that a jury's verdict must be vacated and a new trial ordered only where it is "ineluctably inconsistent" and cannot be "harmonized rationally" (internal quotation marks and emphasis omitted)).

J.B. Hunt's second and third arguments relate to the jury's award of $500,000 for conscious pain and suffering. J.B. Hunt argues, first, that any award for conscious pain and suffering was against the weight of the evidence (Def.'s Mem. 7-9), and, second, that the jury's award was excessive. (*Id.* at 9-11). Although the question of whether, and for how long, Featherstone was conscious was heavily disputed at trial, the Court cannot say that the jury's findings on that score were erroneous or a miscarriage of justice. They were supported by, among other things, (1) the testimony of eyewitness Delfino Robles, who described hearing Featherstone's bones breaking as he was run over by the tractor trailer and who stated that, after

4

the accident, Featherstone was bleeding from the nose, shaking with his eyes open, and appeared to be "trying to talk or he was, he was just like, from the pain" (Tr. 99-103); (2) the testimony of Martin Wales, another non-party eyewitness, who said that, after the incident, Featherstone was moving "very faintly, if — you know, sort of looked like a little bit of shaking" (Tr. 137); and (3) the testimony of Plaintiff's expert, Dr. Robert Meyer, who opined that Featherstone was conscious and suffering during the time he was at the scene, a period lasting approximately several minutes (Tr. 337-79).

   As for the amount of the jury's award, where, as here, a personal injury suit is brought under New York law, a monetary judgment is excessive "'if it deviates materially from what would be reasonable compensation.'" *Rangolan v. Cnty. of Nassau*, 370 F.3d 239, 244 (2d Cir. 2004) (quoting N.Y. C.P.L.R. 5501(c)). "A district court applying this standard 'reviews the evidence presented at trial in support of the challenged damage award and compares the award to other New York cases in which evidence of similar injuries was presented.'" *Id.* (quoting *Presley v. U.S. Postal Serv.*, 317 F.3d 167, 173 (2d Cir. 2003)). Applying that analysis here, the Court cannot say that the jury's award deviates materially from what would be reasonable. The award is consistent with the awards given in cases with evidence of similar injuries, as the list of cases proffered by Plaintiff makes clear. (Pl.'s Mem. 23-24). In fact, even the cases cited by J.B. Hunt arguably support that conclusion, at least when the awards in those cases are adjusted for the fact that they are between thirteen and twenty-two years old. (Def.'s Mem. 10 (citing *Rodd v. Luxfer USA Ltd.*, 272 A.D.2d 535, 536 (2d Dep't 2000); *Donofrio v. Montalbano*, 240 A.D.2d 617 (2d Dep't 1997); *Torelli v. City of N.Y.*, 176 A.D.2d 119 (1st Dep't. 1991)).

   Although not presented as an argument for a new trial *per se*, J.B. Hunt's fourth contention is that the Court erred in sustaining an objection when Wales was asked on cross-

examination whether he had an opinion as to who was at fault in the accident. (Def.'s Mem. 11 (Tr. 146)). That contention borders on frivolous. As J.B. Hunt itself acknowledges, lay opinion testimony is admissible only if it is "rationally based on the witness' perception." (Def.'s Mem. 11 (quoting Fed. R. Evid. 701)). By his own admission (and as shown in the video), however, Wales was looking away when the accident occurred and thus could not testify as to what he saw and heard in the moments leading up to the truck's initial impact, let alone provide an opinion about who was at fault. (Tr. 128-34, 138, 147). Furthermore, it is well established that "[t]he likely benefits of lay opinion testimony must outweigh its costs," and "the costs of lay opinion increases and the benefits diminish the closer the opinion approaches the crucial issues in the case." *Hester v. BIC Corp.*, 225 F.3d 178, 182 (2d Cir. 2000) (internal quotation marks omitted). Here, the costs of allowing Wales to answer defense counsel's question would have been high, in terms of intruding on the jury's prerogative to determine for itself who was at fault, and the benefit would have been low given the rest of the evidence (most notably, the video of the accident) before the jury. For similar reasons, even if the Court had erred in sustaining the objection, any such error would, in the Court's judgment, be harmless.

J.B. Hunt's final argument — that the Court erred in allowing Plaintiff's expert, Richard Toner, to testify about the availability of cross-view mirrors and in instructing the jury that it could consider that testimony in deciding whether J.B. Hunt had been negligent even though such mirrors are not required by law (Def.'s Mem. 12-13) — is easily rejected. First, as the Court ruled in connection with a related motion *in limine*, it is well established that compliance with a legislative enactment or an administrative regulation does not prevent a finding of negligence where a reasonable person would take additional precautions. *See, e.g.*, Restatement 2d of Torts § 288C (1965); *Tufariello v. Long Island R. Co.*, 458 F.3d 80, 91 (2d Cir. 2006).

6

Thus, the fact that J.B. Hunt's truck may have complied with applicable regulations and statutes "does not conclusively demonstrate that [J.B. Hunt] was free from negligence." *Tufariello*, 458 F.3d at 91.  Second, although J.B. Hunt objected to a jury instruction on this issue, it did not — and still does not — identify any defect in the Court's instruction.  (Tr. 439-42).  The instruction merely — and correctly — charged the jury that "*if*" it found, "based on the evidence, . . . that a reasonable person or company in the Defendant's position would have taken additional precautions beyond those required by law or regulation," it "may consider that in deciding whether" J.B. Hunt was negligent and caused the accident.  (Tr. 519 (emphasis added)).

For the foregoing reasons, J.B. Hunt's post-trial motion is DENIED.  The Clerk of Court is directed to terminate the motion.  (Docket No. 87).

SO ORDERED.

Dated: June 24, 2013
New York, New York

_____
JESSE M. FURMAN
United States District Judge

7